**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TERI DAVIS,**

           **Plaintiff,**

**v.**                                                  **Case No. 6:22-cv-2327-ACC-DCI**

**SEAWORLD PARKS AND**
**ENTERTAINMENT, INC.,**

           **Defendant.**

_____

## ORDER

This cause comes before the Court on Defendant SeaWorld Parks and Entertainment, Inc.'s ("SeaWorld") Motion to Dismiss with prejudice Plaintiff's Amended Complaint (Doc. 33), which asserts claims for discrimination in violation of Title III of the American Disabilities Act ("ADA"), Title II of the Civil Rights Act of 1964, and the Florida Civil Rights Act ("FCRA"). Plaintiff has filed a Response (Doc. 34), and the matter is ripe for decision. For the reasons set forth below, the Motion will be granted in part and denied in part.

## II. BACKGROUND FACTS[1]

Plaintiff Teri Davis is an African-American military veteran who suffered an ankle injury in 2012, necessitating surgery and rehabilitation, and she was deemed

---

[1] When reviewing a motion to dismiss, a court will accept the allegations contained in the complaint as true and construe them in a light most favorable to the plaintiff. *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022).

disabled in 2019.[2] (Doc. 30 ¶ 20). On May 8, 2021, Davis spent the day at the SeaWorld theme park with several of her family members. (*Id.* ¶¶ 6, 15). When Davis first arrived at Sea World, Davis asked a parking attendant where the disabled parking was located. (*Id.* ¶ 17). While Davis was talking to the parking attendant, she had a valid handicap placard on her rearview mirror. (*Id.* ¶ 19). The attendant placed a blue preferred parking notice on her car but failed to direct Davis to the disabled parking, so she was required to park in regular parking and walk the additional distance from her parking spot to the SeaWorld entrance. (*Id.* ¶¶ 18, 22).

After two and a half hours at SeaWorld without any issues, Davis and her family attended the Killer Whale show. (*Id.* ¶¶ 23, 24). Davis and her sister (as her companion) sat in the disabled seating area[3] at the show, while the rest of her family sat in the "Splash Zone" area. (*Id.* ¶ 25). Once Davis was seated in the disabled seating area, the "lead" SeaWorld employee named Kevin approached Davis to ask about her disability status, commenting: "You do not look disabled and you cannot sit here." (*Id.* ¶¶ 26, 27). Davis informed him that she was permanently disabled. (*Id.* ¶ 26). Kevin appeared agitated and walked away. (*Id.* ¶ 28). Davis and her companion[4] were the only African-Americans sitting in the disabled seating area.

---

[2] Davis does not state by whom she was "deemed" disabled, and this should be clarified in any amended allegations. As discussed *infra*, a plaintiff must allege sufficient facts to demonstrate how she is "substantially limited in a major life activity" to state a claim for violation of the ADA.
[3] SeaWorld contends that the disabled seating area is designed for wheelchair users and a companion, thus "everyone else was likely a wheelchair user." (Doc. 33 at 3-4).
[4] Davis alleges that SeaWorld allows disabled patrons to have one non-disabled person accompany them in the disabled seating area (Doc. 30 ¶ 29), which the Court accepts as true for

(*Id.* ¶ 29).

Five minutes after Davis's interaction with Kevin, a female employee also asked Davis if she was "handicapped." (*Id.* ¶ 30). Davis responded by asking why the employees kept questioning her disability status, and the female employee told Davis it was her job to ask individuals in the disabled seating area if they were "handicapped." (*Id.*) Davis responded that she "was not handicapped but disabled," and the employee walked away. (*Id.*). When a third employee approached Davis a few minutes later, Davis asked to speak to the manager. (*Id.* ¶ 31).

The lead employee (Kevin) returned and explained that it was the employees' job to verify that people sitting in the designated area were disabled.[5] Although the disabled seating area appeared full, Davis was the only patron questioned repeatedly by SeaWorld's employees. (*Id.* ¶¶ 29, 32, 33). Therefore, Davis advised an employee in the arena that she was going to file an ADA complaint against the park, and the employee responded that "they welcomed the complaint." (*Id.* ¶ 34). When the announcer at the Killer Whale show asked all members of the military and veterans to stand, Davis stood to be recognized[6] and then left the arena. (*Id.* ¶ 38). Davis

---

purposes of deciding the Motion to Dismiss. *Holland*, 50 F.4th at 1093.

[5] Davis acknowledges in the Amended Complaint that "a public accommodation may impose legitimate restrictions on individuals [who] may be entering a designated area for those with special needs" but, she argues, the restrictions cannot be "based on . . . general conclusions based on how an individual appears." (Doc. 30 ¶ 35). Davis argues in her Response (Doc. 34 at 2) that "not all persons sitting in the designated area" were "in wheelchairs or using some other mobility device," however, Davis did not specifically allege this fact in the Amended Complaint.

[6] Davis argues in her Response that SeaWorld's employees "only stopped questioning her after she stood to be recognized as a military veteran." (Doc. 34 at 2).

informed a SeaWorld guest services employee of the events that had taken place, and the guest services employee apologized to Davis and assigned a case number to her case. (*Id*. ¶ 39).

On September 9, 2022, Davis filed an administrative complaint with the Florida Commission on Human Relations alleging that SeaWorld discriminated against her on the basis of her race on May 8, 2021. (Doc. 34-1 at 1-3 (FCHR No. 202338225—Public Accommodation Complaint Form)). The Commission responded to Davis with a Notice stating that "the information submitted on the complaint [was] insufficient for the Commission to begin its investigation" because:

> A complaint of discrimination must be filed with the Commission within 365 days of the last alleged date of harm. More than 365 days have elapsed since the last alleged date of harm you listed in your complaint.
>
> Although your complaint is insufficient for the Commission to launch an investigation, it may be possible for you to amend your complaint . . . within 60 days after the initial filing to cure technical defects and omissions and to clarify and amplify allegations. . . You have until November 11, 2022 to amend your complaint. . . .
>
> *Be advised, a complaint of discrimination must be filed with the Commission within 365 days of the last alleged date of harm. The 60-day amendment period does not extend the 365-day filing deadline, and a delay may result in the complaint being untimely.*

(*Id*. at 4 (emphasis in original)). The Commission dismissed Davis's FCHR complaint against SeaWorld on November 21, 2022 because, with the untimely complaint, "[c]onsidering all information received, the Commission does not have

authority to investigate." (Doc. 34-1).[7]

On December 15, 2022, Davis filed suit against Sea World in this Court. (Doc. 2). After SeaWorld filed its Motion to Dismiss the original Complaint on March 3, 2023, Davis filed an Amended Complaint within 21 days as permitted under Federal Rule of Civil Procedure 15. (Doc. 30) The Court denied the Motion to Dismiss without prejudice as moot. (Doc. 31). SeaWorld then filed its Motion to Dismiss the Amended Complaint on April 7, 2023. (Doc. 33). Davis filed her Response in opposition on April 21, 2023 (Doc. 34).

### III. LEGAL STANDARD

For purposes of deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Specific facts that are not

---

[7] Plaintiff attached the FCHR administrative complaint and the Commission's responses to her Response to the Motion to Dismiss. (*See* Doc. 34-1). The Court may consider such attachments at this stage if the material is (1) central to plaintiff's claim and (2) undisputed. *See, e.g., Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *3 (M.D. Fla. Apr. 9, 2012), and cases cited therein.

necessary to state a claim for relief do not need to be included in a complaint. *Id.* Legal conclusions or a recitation of the elements of a cause of action are insufficient to satisfy a plaintiff's burden to prove he is entitled to relief. *Id.* at 555. A facially plausible claim must plead facts that give rise to a reasonable inference that a defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id.*

SeaWorld argues that Davis's Amended Complaint should be dismissed with prejudice. A district court may dismiss a complaint with prejudice when granting leave to amend would be futile. *W. Sur. Co. v. Steuerwald*, 760 F. App'x 810, 814 (11th Cir. 2019); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) (citation omitted).[8] If a more carefully drafted complaint may state a viable claim, a district court should give the complainant at least one chance to amend before dismissing with prejudice. *Steuerwald*, 760 F. App'x at 814.

## IV. ANALYSIS

SeaWorld moves to dismiss the Amended Complaint, arguing that Davis's claims for intentional discrimination in violation of Title II of the federal Civil Rights Act of 1964 ("CRA") and the Florida Civil Right Act ("FCRA") are barred

---

[8] Unpublished opinions of the Eleventh Circuit constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

by the exhaustion requirement in their respective statutes. SeaWorld further argues that Davis fails to allege disability discrimination under the ADA, as opposed to a race discrimination claim. SeaWorld also argues that the remedies available to Davis for her claim under the ADA governing public accommodations in Title III and the CRA claim are limited to injunctive relief, and her claim for $4 million in monetary damages should be dismissed. (*See* Doc. 1 (Civil Cover Sheet)).

### A. Exhaustion of Administrative Remedies

#### 1. *Florida Civil Rights Act Claim*

Davis alleges that SeaWorld violated the FCRA when its employees "questioned and harassed [her] about her disability [which] essentially caus[ed] her to be constructively removed" from the disabled seating area. (Doc. 30 ¶ 54). Davis alleges that she was the only African-American patron sitting in the disabled area (aside from her companion) and the only person who was questioned about her disability. (*Id.*).[9]

The general purpose of the FCRA is "to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." Fla. Stat. § 760.01(2). Before a plaintiff may bring an FCRA civil action, she must exhaust her administrative

---

[9] Given that the Court's dismissal with prejudice of Davis's FCRA claim for failure to exhaust administrative remedies, it is not necessary to determine if she stated a disability discrimination claim under the FCRA as well.

remedies, as set forth in Fla. Stat. § 760.11. *See Sheeley v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1205 (11th Cir. 2007). The claimant must file a charge with the Florida Commission on Human Relations (the "Commission") within 365 days of the alleged violation. Fla Stat. § 760.11(1). If the Commission determines that no reasonable cause exists to believe that unlawful discrimination occurred, the claimant may request an administrative hearing before an ALJ. *Id*. § 760.11(7). After the hearing, the ALJ issues a recommended order to the Commission, which then issues a final order by adopting, rejecting, or modifying the recommended order. *Id*. The claimant may not file a civil action unless the Commission, in its final order, determines that the FCRA has been violated. *See id.; Woodham v. Blue Cross & Blue Shield of Fla.*, Inc., 829 So.2d 891, 895 (Fla. 2002) (holding that a prerequisite to bringing a civil action under the FCRA is that the complainant must file a complaint with the Commission within 365 days of the alleged violation). If the final order issued by the Commission determines that the FCRA has not be violated, the claimant has 30 days to seek judicial review pursuant to Fla. Stat. § 120.68, which provides for review of adverse agency actions. *Id*. §§ 760.11(13), 120.68(2)(a).

SeaWorld argues that Davis's FCRA claim is due to be dismissed with prejudice because she failed to exhaust administrative remedies as required under the FCRA when she waited to file her complaint with the Commission until September 9, 2022, more than 365 days after the May 8, 2021 incident and she received a Notice of Dismissal. The Commission notified her of the untimely filing

and allowed her an opportunity to amend it; however, her submission apparently failed to rectify the untimeliness of the administrative complaint and the Commission dismissed it as untimely on November 22, 2022. (*See* Doc. 34-1).

Davis argues that she obtained what she refers to as a "Right to Amend" letter and Notice of Dismissal, which she argues "would satisfy her exhaustion of administrative remedies under Title II of the [federal] Civil Rights Act, and thus her claim for racial discrimination must survive." (Doc. 34 at 5). "Based on similar arguments"—which Davis does not articulate regarding FCRA—she should also be able to assert a FCRA claim without properly exhausting administrative remedies under the state statute.[10] (*Id*. at 6).

However, the Eleventh Circuit's holding in *McCullough v. Nesco Resources LLC*, based on a failure to comply with the FCRA's exhaustion requirements, addresses a similar set of facts and forecloses Davis's FCRA claim where she failed to exhaust her administrative remedies as required. 760 F. App'x 642 (11th Cir. 2019). In *McCullough*, the Eleventh Circuit affirmed the district court's dismissal of the plaintiff's FCRA claim in his lawsuit where he had failed to file his complaint with the Commission within 365 days, the Commission dismissed his discrimination claims, and he "had the option to appeal the Commission's decision within 30 days, but he d[id] not allege that he did so." 760 F. App'x at 647 (citing Fla. Stat.

---

[10] Davis cites *Peters* and Title II, 42 U.S.C. § 2000a, *not* the FCRA.

§ 760.11(7), (13); *Woodham*, 829 So.2d at 895). The Court held that because he had not followed the procedures outlined in § 760.11, he could not institute a civil action based on his FCRA claims. *Id*. (citing *Sheely*, 505 F.3d at 1205).

Davis's untimely complaint in this case, similar to *McCullough*, led the Commission to dismiss it as untimely. (*See* Doc. 34-1). She had the option to appeal the Commission's decision within thirty days, but she did not (nor allege such appeal). Therefore, it is undisputed that Davis failed to exhaust her administrative remedies under the FCRA prior to bringing her FCRA claim. As in *McCullough* where the plaintiff failed to appeal the Commission's dismissal of his untimely FCRA discrimination claim, Davis has failed to comply with the procedures outlined in § 760.11 and she cannot institute a civil action based on her FCRA complaint to the Commission. *See McCullough*, 760 F. App'x at 647-48. Therefore, the claim will be dismissed with prejudice because granting leave to amend would be futile. *See W. Sur. Co.*, 760 F. App'x at 814.

### 2. *Title II of the Civil Rights Act Claim*

Both parties acknowledge that Davis has referred to discrimination by SeaWorld in violation of Title II of the Civil Rights Act, 42 U.S.C. § 2000a(a), which prohibits discrimination on the basis of race in places of public accommodation. As an initial matter, Davis should have asserted her claim for violation of Title II of the CRA in a separate count, although she does *generally* allege in the "Background" section of the Amended Complaint that SeaWorld discriminated against her on the

basis of her race.[11] (Doc. 30 ¶¶ 6-7).

SeaWorld argues that Davis's race discrimination claim under the federal Civil Rights Act of 1964 is due to be dismissed because, similar to the FCRA claim, she failed to allege in the Amended Complaint that she exhausted her administrative remedies. SeaWorld is correct that to bring a viable claim under Title II, a plaintiff must first exhaust state or local administrative remedies if such remedies are available, and a plaintiff must wait thirty days after providing written notice to the appropriate state authority before filing suit. *See* 42 U.S.C. § 2000a-3(c) (stating that, if a state or local law prohibits the alleged discriminatory act and a state or local agency has authority to grant relief from the discriminatory act, no civil action can be brought until 30 days after the appropriate authority has been given written notice of the discriminatory act); *Strober v. Payless Rental Car,* 701 F. App'x 911, 913 n.3 (11th Cir. 2017) (per curiam).

Davis acknowledges that Florida has a statute prohibiting racial discrimination in public accommodations and maintains a state agency at which plaintiffs are to file such claims.[12] She argues, however, that "the granting of relief . . . may or may not occur and if this does not occur [then] the plaintiff's only other

---

[11] Although Davis alleges in the Amended Complaint that SeaWorld discriminated against her on the basis of her "race, color, or national origin" she cites only her race (African-American) as the basis for the disparate treatment and does not identify a separate basis for discrimination based on "national origin" or "color." (Doc. 30 ¶¶ 6-7).

[12] As explained in the previous section, the FCRA prohibits an individual from being denied access to places of public accommodation based on race, and the Commission investigates FCRA complaints. *See Strober*, 701 F. App'x at 913 n.3.

option is to file [her] complaint in either a state or federal court." (Doc. 34 at 5). Davis points out that she did file an administrative complaint with the Commission and received the Notice of Dismissal on November 21, 2022 which, she argues, satisfies her exhaustion of administrative remedies for Title II of the CRA.

As explained above, Florida law requires that discrimination complaints be filed with the Commission within 365 days of the alleged violation, Fla. Stat. § 760.11(1); consequently, the Commission dismissed her administrative complaint as untimely on November 21, 2022. (Doc. 34-1). SeaWorld argues that Davis's failure to properly exhaust her administrative remedies on her *federal* CRA claim cannot be cured at this late juncture since she filed suit on December 15, 2022, therefore, her federal CRA discrimination claim should be dismissed with prejudice like her FCRA claim. (Doc. 33 at 8-9).

SeaWorld, relies on the Middle District case of *Peters v. Cheval Golf & Athletic Club, LLC*, to argue that Davis's claim should be dismissed with prejudice because she failed to file a timely complaint with the Commission and the issue of untimeliness could not be cured. Case No. 8:20-CV-2080-KKM-AAS, 2022 WL 88197, at *5 (M.D. Fla. Jan. 7, 2022) ("[T]he Eleventh Circuit [has] held that [42 U.S.C. § 2000a-3(c)]'s requirement that '[n]o action shall be brought . . . until such administrative remedies as are available are exhausted' means that a plaintiff cannot cure a failure to take required pre-filing action by taking such action after filing a complaint."); *Harris v. Ericson*, 457 F.2d 765, 766 (10th Cir. 1972) (Title II "in very

understandable language precludes institution of a federal court proceeding of this particular type without first giving the state an opportunity to remedy the situation . . . The legislative intent appears to us to be quite clear."). However, the *Peters* case on which SeaWorld relies is easily distinguished because Davis waited the requisite period before filing suit on her CRA claim.

In *Peters*, the court held that the plaintiffs could not cure the exhaustion defect because they had provided notice to the Commission *after* they had already filed suit. *Peters*, 2022 WL 88197, at *5. The district court found that the plaintiffs' delayed filing of the administrative complaint "did not remedy [their] failure to satisfy statutory prefiling conditions." *Id*. at *3. In contrast, in this case, Davis contends in her Response that she filed her administrative complaint with the Commission on September 9 2022, and waited more than three months before filing her Complaint in this Court on December 15, 2022.

As the District of Columbia Circuit explained in applying the requirements of Title II of the federal CRA, state statutes of limitations will not divest federal courts of jurisdiction unless Congress has specifically mandated that notice to the state authority must be filed within the state's time limitations. *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 154 (D.C. Cir. 2015). In *Brown*, the customer of a grocery store—a public accommodation—alleged that the store's employees discriminated against him based on his race in violation of Title II of the CRA. *Id.* at 147. The district court dismissed the Title II claim because the *pro se* plaintiff had

failed to file an administrative complaint with the proper state authority within a year of the alleged discrimination, a deficiency that was impossible for him to cure. *Id.* at 150. The D.C. Circuit reversed, holding that the plaintiff was able to comply with the notice requirements even after his lawsuit was filed by providing written notice of his allegations to the state authority, abating the case, and waiting an additional thirty days to assert the federal claim because Title II did not incorporate the state's requirement that notice be provided within a specific time of the occurrence of the alleged discrimination. *Id.* at 154.

Additionally, because the *pro se* plaintiff alleged notification of the state authority in his response, but not in the complaint, the plaintiff would be granted leave to amend the complaint after the waiting period had passed *See id.* (reversing dismissal of Title II claim and allowing plaintiff to comply by providing notice to state agency and amending pleading). Even in the *Peters* decision on which SeaWorld relies, the district court recognized that the plaintiff's failure to file the administrative complaint with the Commission did not deprive the court of jurisdiction, and the statute of limitations would not bar their claim because the equitable relief available under Title II could be obtained by refiling their suit thirty day after filing their administrative complaint with the Commission. 2022 WL 88197, at *4 (citation omitted).

As in *Brown*, Davis has attached a copy of her administrative complaint filed with the Commission to her Response (Doc. 34-1), but not to her Amended

Complaint. According to Davis's Response to SeaWorld's Motion to Dismiss, Davis satisfied Title II's notice requirement by filing a complaint with the Commission (albeit one that was determined to be untimely) and by waiting more than thirty days before filing suit on her Title II claim. (Doc. 34-1 at 1). Thus, Davis has exhausted her administrative remedies for her Title II claim. However, she fails to allege in her Amended Complaint a Title II claim in a separate count, or that she complied with the exhaustion requirement by filing the administrative complaint with the Commission, and these defects will be required to be corrected in any amended complaint.

### B. Title III of the Americans with Disabilities Act Claim

Davis alleges that SeaWorld discriminated against her on the basis of her disability by failing to ensure that individuals without an obvious mobility[13] device, such as a wheelchair or walker, have adequate and fair use of, and equal access to, SeaWorld's accommodations. She further alleges that SeaWorld discriminated against her by failing to make reasonable modifications to its policies and practices so that employees would not decide whether individuals have disabilities based on superficial reasons, such as whether they require mobility devices. (Doc. 30 ¶ 2

---

[13] Other such disabling conditions impacting mobility or balance leading a patron to prefer to sit in disabled section could potentially include conditions causing fatigue or circulation issues, which could lead them to prefer seating in a more convenient disabled seating area. SeaWorld argues in the Motion to Dismiss that the disabled seating area is "designed for wheelchair users and one companion," apparently suggesting it is to the exclusion of other disabling conditions. (Doc. 33 at 3). The parties are not precluded from addressing this issue at the summary judgment stage.

(referring to "those individuals who may not look disabled . . . but are otherwise disabled"); *see* Doc. 34 at 2 "Defendant assumes . . . that disabled individuals are only those individuals who use wheelchairs, walkers or some other mobility device.").

Title III of the ADA prohibits discrimination against an individual "on the basis of disability in . . . any place of public accommodation by any person who owns, leases . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA defines discrimination to include:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. . . .

*Id*. § 12182(b)(2)(A)(ii). Title III also prohibits places of public accommodation from denying disabled individuals "the opportunity . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." *Id*. § 12182(b)(1)(A)(i). A plaintiff alleging Title III ADA discrimination must initially prove that (1) she is a disabled individual; (2) the defendant owns or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff because of his or her disability. *Kennedy v. Floridian Hotel, Inc.,* 998 F.3d 1221, 1231 (11th Cir. 2021) (citing 42 U.S.C. § 12182(a)).

In this case, SeaWorld moves to dismiss Davis's claim with prejudice based

on the first and third elements, arguing that (1) Davis failed to plead facts in support of her conclusory allegation that she has a disability that substantially limits a major life activity as defined under the ADA; and (2) she failed to allege discrimination based on disability—rather than race—under the ADA. (Doc. 33 at 10, 13). The parties do not dispute that the second element is met because SeaWorld's theme park constitutes a "public accommodation" as defined in the ADA. 42 U.S.C. § 12181(7)(B) (listing a "park, zoo, amusement park, or other place of recreation"); *see A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc.,* 469 F. Supp. 3d 1280, 1302 (M.D. Fla. 2020), *aff'd,* 50 F.4th 1097 (11th Cir. 2022) (holding a theme park to be a public accommodation under the ADA).

### 1. *Element One: Disability under the ADA*

SeaWorld argues that Davis has not alleged sufficient facts to establish that she has a disability covered by the ADA. The ADA defines an individual with a disability as someone with "a physical or mental impairment that substantially limits one or more major life activities . . . [someone with] a record of such an impairment; or [someone who is] regarded as having such an impairment." 42 U.S.C § 12102(1)(A)–(C).

Davis alleged in the Amended Complaint that she "is a qualified person with a disability as she has a physical impairment that substantially limits a major life activity, she has a record of such impairment . . . ." but she failed to identify the major life activities limited by her alleged impairment in her Amended Complaint.

(Doc. 30 ¶ 41). Davis concedes that she "did not allege specifically what major life activities were affected" by her ankle injury in the Amended Complaint sufficient to demonstrate that she has a "covered disability" under the ADA. (*See* Doc. 34 at 2, 7). However, she argues, "it can be *reasonably inferred* that *if* an individually suffered a serious ankle injury that required surgery which rendered them disable[d], the major life activities that *would be affected* would be anything from difficulty walking for a substantial period of time, loss of sleep due to pain and discomfort, standing for an extended period of time, or even bending to lift certain household items." (*Id.* (emphasis added)). Davis in her Response contends that she can provide "more specifics as to the injury, the surgical procedure, rehabilitation, and recovery," although she contends that it is "premature" to put it in the pleading, rather than presenting it in discovery. (*Id*. at 7).

The initial problem with these hypothetical statements is that they read like suppositions of major life activities that "would be affected" by anyone with an ankle injury, rather than the specific *personal* experience of Davis regarding which of her major life activities are actually affected by her ankle injury. The second problem is that these statements, to the extent that they actually reflect Davis's personal limitations, are in the Response to the Motion to Dismiss and are not alleged in the Amended Complaint.[14]

---

[14] The Response also states: "For Mrs. Davis to falsify or embellish her ankle injury to the state of a disability would make no sense or be beneficial to her, knowing that her medical records

The major life activities that are limited by a disability cannot be "left to conjecture" in a complaint because it is a "foundational" element of an ADA claim. *Rohttis v. Sch. Dist. of Lee Cnty.*, No. 2:21-CV-737-JES-NPM, 2022 WL 523605, at *7 (M.D. Fla. Feb. 22, 2022) (citation omitted) (dismissing without prejudice as conclusory an ADA claim that plaintiff had a physical impairment substantially limiting "one or more major life functions"). Thus, Davis's allegation as currently stated in the Amended Complaint that she has an "impairment that substantially limits a major life activity" is conclusory. Although Davis has alleged that her ankle injury required surgery and substantial rehabilitation, that she has a handicapped parking placard for her car, and that she has been "deemed" disabled—all of which suggests that she may have an impairment—she must provide a sufficient factual basis to meet the ADA's statutory definition of disabled and set forth the major life activities limited by her impairment. *See* 42 U.S.C § 12102(A)–(B); *see also Dixon v. McArthur Dairy, LLC*, No. 09-21774-CIV-SEITZ, 2010 WL 2985634, at *4 (S.D. Fla. July 23, 2010) (dismissing plaintiff's ADA claim where he failed to allege substantial limitations on major life activity of working caused by his dyslexia and mental impairment where he had worked successfully for 20 years as a transport driver).

---

and proof of her disability would be requested and she would have to provide as much. (Doc. 34 at 2). The requirement that she state which major life activities are impacted by her disability is a pleading requirement under the ADA for all plaintiffs, and not specific to Davis.

Because Davis has not sufficiently alleged facts in support of substantial limitations on her major life activities due to her ankle injury in her Amended Complaint, her ADA claim will be dismissed with leave to amend to provide these facts in support of her ADA claim.[15] *See Rohttis*, 2022 WL 523605, at *7 (granting leave to file amended complaint for the plaintiff to identify which major life activities were substantially limited by her disability).

## 2. *Element 3: Discrimination "because of" disability*

SeaWorld argues that Davis fails to state a claim under the ADA for discrimination on the basis of a disability as opposed to race, citing several allegations from the Amended Complaint that contend Davis "was the only one being question and harassed" or "singled out" about her disability and "the only African American sitting in the disabled section" (aside from her companion). (Doc. 30 ¶¶ 6, 29, 32, 54). SeaWorld argues that such allegations do not state a claim for discrimination under the ADA which prohibits discrimination only on the basis of disability. SeaWorld points to the allegations in the Amended Complaint that the disabled seating area was full of guests with disabilities, but employees questioned only Davis about sitting there, "which underscores that SeaWorld was not engaged in discrimination on the basis of disability." (Doc. 33 at 14-15 (citing cases finding

---

[15] Although Davis vaguely alleged in the Amended Complaint that she was "regarded as" disabled (Doc. 30 ¶ 41), she did not respond to SeaWorld's argument that she failed to plausibly allege that she is "regarded as having a disability." (Doc. 33 at 12). Moreover, such a contention would contradict Davis's description of the employees who regarded her as not disabled.

that the discrimination as alleged was on the basis of race, not disability, as when a disabled individual of a different race was provided an accommodation denied to the disabled plaintiff)).

Davis responds that her "complaint is based [on] her disability as well as a separate cause of action based [on] race"; in other words, she is pleading disability discrimination and race discrimination as alternative theories of recovery. (Doc. 34 at 8). She argues that she was "continuously questioned" about her disability until she left the Killer Whale show and "race may have also played a factor" but "her race was not the primary factor as to her being questioned about her disability." (*Id.*). Arguing that she has stated a disability claim, she alleges that SeaWorld's employees did not "communicate with" her "effectively" and instead, "she was more or less accused of not being disabled"; she "received poor service because of her disability"; and even though she "advised at least two employees that she was disabled [she] was continuously questioned and harassed." (*Id*. at 9). Even though "Davis was entitled to receive the same benefit as the other disabled patrons," she alleges that "she was not afforded this opportunity." (*Id*.).

Davis's Amended Complaint is not a model of clarity. But she alleges at the outset that she is suing SeaWorld for "discrimination based on [her] *disability* and *race* pursuant to Title III of the American [sic] Disabilities Act of 1990 . . .[and] Title II of the Civil Rights Act." (Doc. 30 at 1 (emphasis added)). In Count I, Davis alleges she was "improperly questioned" about her (non-obvious) "disability" and

"harassed" with repeated questioning (*id.* ¶¶ 42-43, 45). The crux of Davis's disability claim boils down to this theory of the case, which she explains in her Response:

> Davis by walking in and sitting in the disabled persons section . . . directly identified herself as a disabled person to the [SeaWorld employees] at which time [they] should not have questioned her about her disability. Furthermore, even if the court finds that the questioning of Mrs. Davis was reasonable, Mrs. Davis never indicated that she was not disabled nor held herself out as not disabled when questioned. Mrs. Davis immediately advised that she was in fact disabled and *the questioning should have ceased at that point* to allow Mrs. Davis to enjoy the full benefits of the section and show. In addition, once Mrs. Davis advised that she was a disabled person [then] she was entitled to all of the benefits of a disabled person and unfortunately, she was not able to enjoy the benefits, because she left the show [prematurely] after being harassed, embarrassed, and humiliated.

(*Id.* at 10) (emphasis added). Davis essentially argues that SeaWorld employees violated the ADA and its implementing regulations by questioning whether she was disabled multiple times in the space of just a few minutes, even though she "identified herself as a disabled person" by choosing to "sit[] in the disabled" section and remaining there after the first employee pointed it out to her.

However, because SeaWorld (understandably) focused its argument on Davis's allegations in the Amended Complaint that she was singled out for questioning of her disability on the basis of race, and Davis failed to sufficiently allege in the Amended Complaint her disability discrimination claim as more fully fleshed out in her Response (in the quoted material above), neither side has adequately briefed the issue of whether a public-accommodation's *repeated*

"verification" or questioning of a disabled person without a visible mobility device, such as a wheelchair or walker, who sits in a disabled section violates the ADA.

Under the applicable regulations, a public-accommodation employee's questioning of the "nature" or "extent" of a disabled person's disability violates the ADA:

> The ADA is implemented and enforced through regulations enacted by the Department of Justice. 42 U.S.C. § 12186(b). For Title III of the ADA which relates to public accommodations, such regulations are codified at 28 C.F.R. §§ 36.101 *et seq*. The Department of Justice's implementing regulations are entitled to deference. *Bragdon v. Abbott*, 524 U.S. 624, 646, 118 S. Ct. 2196, 2208, 141 L.Ed.2d 540 (1998); *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996) (noting that regulations promulgated by the Department of Justice interpreting the ADA are entitled to "considerable weight"). "A public accommodation shall not ask about the nature or extent of a person's disability." 28 C.F.R. § 36.302(c)(6) (with two exceptions related to service animals not relevant here). This "regulation thus protects individuals with disabilities from possibly unwanted questioning." *Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1356 (S.D. Fla. 2015).

*A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc*., 469 F. Supp. 3d 1280, 1308 (M.D. Fla. 2020), *aff'd*, 50 F.4th 1097 (11th Cir. 2022); *Garneaux v Kym Ventures LLC*, No. 1:16-cv-3012-AT, 2018 WL 8131765 (N.D. Ga. Sept. 6, 2018) ("Specifically, the ADA regulation [§ 36.302(c)(6)] provides that a 'public accommodation shall not ask about the nature or extent of a person's disability'").

Sea World also argues that it could not have discriminated against Davis on the basis of her disability because its employees had "no knowledge of her disability" until she responded to their questions asking whether she was disabled. (Doc. 33 at

15). SeaWorld cites *Salyer v. AmSouth Bank* as finding plaintiff's claims for disability harassment failed in part because some of the alleged discriminatory actions took place *before* the defendant-employer knew that the employee had a disability. 2007 WL 9723547, at *11 (M.D. Fla. Apr. 18, 2007). Davis argues the facts of *Salyer* are inapposite because the plaintiff-employee failed to identify herself to her employer as disabled at the time she was hired.

While it is true that, in general, a defendant will not be held to have discriminated against a disabled person solely on the basis of a disability if the defendant knew nothing about the disability,[16] Davis argues that by virtue of her choosing to sit in the disabled section at SeaWorld, when most of her family sat in the closer "Splash Zone" section, she was communicating through her actions that she had a disability and was entitled to sit in the disabled section. The *Salyer* decision is also easily distinguished in that the disabled employee was suing under a different provision of the ADA dealing with discrimination in employment (Title I), where an employee may choose to keep the disabling condition private and not share the information with the employer, and this will negate the employer's liability, which is limited to discrimination related to "known" or obvious disabilities.[17]

---

[16] *See Hendricks v. Stepp*, No. CA3:08-3299-CMC-PJG, 2009 WL 2224524, at *5 (D.S.C. July 22, 2009), *aff'd*, 360 F. App'x 447 (4th Cir. 2010) (holding that where there was no allegation that the defendant knew about the plaintiff's alleged disability, the defendant could not have discriminated against the plaintiff "because of" the disability).

[17] *Dudley*, 333 F.3d at 309 (recognizing this difference in "obviousness" between the ADA's discrimination provisions governing employment and public accommodations; *id.* at 308 ("When such a disability is concealed, it would be mindless to hold the employer liable for failing

The First Circuit in *Dudley v. Hannaford Brothers Company*, explained that "the obviousness" of an individual's disability is not relevant to the requirements under Title III in public accommodations:

> Title III offers no incentive for an individual to conceal his or her disability. The operative provision, 42 U.S.C. § 12182(b)(2)(A)(ii), requires a person with a disability to request a reasonable and necessary modification, thereby informing the operator of a public accommodation about the disability. It would be pointless to impose upon the plaintiff the burden to inform the public accommodation's operator of his disability but then exempt the operator, by judicial fiat, from accommodating disabilities that are not obvious. Congress did not place a limitation on the reach of Title III *based on the obviousness of an individual's disability*, and it would be a usurpation of congressional authority for us to do so here. For these reasons*, we hold that the obviousness* vel non *of an individual's disability has no relevance to the mandates of Title III*.

333 F.3d 299, 309 (1st Cir. 2003) (emphasis added).

Thus, based on the facts as alleged in Davis's Response, the employees' "verification" as to whether she should be seated in the disabled section plausibly relates to the "nature or extent" of her disability, which did not require her to use a visible assistive device, such as a wheelchair. The facts as alleged by Davis are that, once she was seated in the disabled seating area, the lead/supervisory SeaWorld employee (Kevin) stated that: (1) it was the employees' job "to verify" that people sitting in the designated area "were disabled"; and (2) "You do not look disabled and you cannot sit here." Davis's allegations, read in the light most favorable to her at

---

to accommodate the (unknown) disability. So viewed, under Title I obviousness is relevant only as a proxy for actual knowledge.").

the motion to dismiss stage, plausibly allege a violation of the ADA and regulations that preclude a public accommodation from asking "about the nature or extent of a person's disability." *See* 28 C.F.R. § 36.302(c)(6); *cf. id.* § 36.302(f) ("Ticketing" . . . "A public accommodation may not require proof of disability, including, for example, a doctor's note, before selling tickets for accessible seating.").

Moreover, Davis adequately alleged in the Amended Complaint that employees "verified" her disabled status not one time, but three separate times— even after she told the lead employee that she was disabled, other employees asked her two more times—and the lead employee allegedly disputed whether she was disabled, saying she "did not look disabled." She alleges this repeated questioning "humiliated and embarrassed" her leading her to leave the show prematurely.[18]

In the context of an ADA-Title III dispute involving a service animal, the district judge recognized that while a single question regarding the animal's "task or function" was legitimate under the regulation, such questions could become discriminatory if repetitive and suggest a pretext for discrimination:

> Clearly an inquiry would cease to be legitimate if it was used to harass or discourage people with disabilities from availing themselves of public accommodation. In this way, unduly repetitive questioning, after an adequate answer has been given, could suggest a pretext for discrimination, constituting an illegitimate inquiry.

---

[18] The Court's determination that Davis plausibly alleges an ADA claim at this stage does not foreclose SeaWorld from arguing at the summary judgment stage that its employees' conduct, based on the evidence developed during discovery, was reasonable under the ADA.

*Dilorenzo v. Costco Wholesale Corp.*, 515 F. Supp. 2d 1187, 1194 (W.D. Wash. 2007) (ultimately holding that the inquiry regarding the animal did not exceed the boundaries of legitimate inquiry under the ADA); *cf. Garneaux*, 2018 WL 8131765 (denying summary judgment to restaurant where disabled veteran with PTSD and anxiety testified that employees refused admission to her because "she didn't look handicapped" and she "did not need the [service] dog," along with other dismissive conduct). Because the repeated questioning by SeaWorld's employees in this case could plausibly relate to the "nature or extent" of her disability or suggest a pretext for discrimination, Davis plausibly states an ADA claim as long as these allegations are incorporate into an amended pleading.

In summary, as her claims are currently presented in the Amended Complaint, Davis fails to state a viable claim under Title III of the ADA because, as she concedes, she failed to allege how specifically she is substantially limited in a major life activity as required to state an ADA claim. She also clarifies in her Response that she is alleging that SeaWorld discriminated against her based on her disability. Because her allegations, included in an amended pleading, would plausibly state a claim under the ADA, her claim will be dismissed without prejudice with leave to amend and correct these omissions.

### C. Injunctive Relief

SeaWorld argues that Davis's claims for monetary relief under both the ADA and Title II of the Civil Rights Act should be dismissed with prejudice because such

damages are not available under either statute.[19] (Doc. 33 at 17-18). Davis did not respond to this argument, and SeaWorld is correct.

Although Davis will be granted leave to amend her ADA and CRA claims, she cannot recover money damages, only injunctive relief because neither statute allows a private right of action for money damages. Under the ADA, "[m]onetary damages are only available if the civil action is initiated by the Attorney General." *Jairath v. Dyer*, 154 F.3d 1280, 1283 (11th Cir. 1998) (holding that the plaintiff could only pursue injunctive relief because a private right of action for damages does not exist under the ADA) (citing 42 U.S.C. §§ 12188(a)(2) & 12188(b)(2)(B)); *see also A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1290 (11th Cir. 2018) (noting that Title III of the ADA provides only prospective injunctive relief for violations and not damages for past discrimination or past remedied violations); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) (injunctive relief is the only form of relief available to plaintiffs suing under Title III of the ADA).

Similarly, only injunctive relief is available under Title II of the Civil Rights Act of 1964. *Zinman v. Nova Se. Univ., Inc.*, No. 21-13476, 2023 WL 2669904, at *4 (11th Cir. Mar. 29, 2023) (student's claim for damages under Title II failed because such damages are not available under section 2000a) (citing *Newman v.*

---

[19] The Court need not address recovery under FCRA since this claim will be dismissed with prejudice.

*Piggie Park Enters., Inc.*, 390 U.S. 400, 401–02 (1968)); *see also Houston*, 733 F.3d at 1329 (noting Title II of the Civil Rights Act of 1964 allows a private right of action for only injunctive relief for violations).

Additionally, to be entitled to injunctive relief, an ADA plaintiff must demonstrate "a sufficient likelihood that [s]he will again be wronged in a similar way" in the future. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). A plaintiff pursuing "injunctive relief in federal court must plead a genuine threat of imminent injury." *Houston*, 733 F.3d at 1329 (citation omitted). Thus, in order to warrant injunctive relief, Davis must allege that that she intends to return to SeaWorld and that there is a sufficient likelihood that she would be treated similarly.

## CONCLUSION

Based on the foregoing, it is ordered as follows:

1.     Defendant SeaWorld Parks and Entertainment, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (Doc. 33) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.   Plaintiff's claim for discrimination under the Florida Civil Rights Act is dismissed with prejudice for the reasons set forth above.

   b.   Plaintiff's claim for race discrimination under Title II of the Civil Rights Act of 1964 is dismissed without prejudice with leave to

repleat: (1) as a separate count; and (2) with supporting facts indicating she has exhausted administrative remedies.

c. Plaintiff's ADA claim is dismissed without prejudice with leave to replead facts in support that: (1) she has a disability that substantially limits a major life activity as defined under the ADA; and (2) set forth a sufficient basis to support a claim for disability discrimination as explained above.

2. Plaintiff's demand under Title II of the Civil Rights Act and Title III of the ADA for money damages is dismissed with prejudice.

3. Plaintiff Davis is **ORDERED** to file the second amended complaint within 14 days. **Failure to timely file the second amended complaint will result in dismissal of the case without prejudice for failure to prosecute diligently under M. D. Fla. Local Rule 3.10.**

4. Defendant's Answer is due within 14 days of the filing of any second amended complaint.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on July 25, 2023.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record